UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

MIGUEL DIAZ,

                              Plaintiff,

   -against-                                      9:19-CV-1438 (LEK/TWD)

ERIC J. SMITH, *et al.*,

                              Defendants.

## **MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

      Miguel Diaz, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this pro se action pursuant to 42 U.S.C. § 1983, asserting constitutional claims arising from his incarceration at Upstate Correctional Facility ("Upstate"). Dkt. No. 1 ("Complaint"). This Court reviewed the complaint in accordance with 28 U.S.C. § 1915 and found Plaintiff's (1) Eighth Amendment excessive force claims against Correction Officer Adam Gallagher, Correction Officer Robert Lamica, Superintendent Donald Uhler, Sergeant Trevor Dunning, Lieutenant Gary Gettmann, Correction Officer Domonic, Correction Officer Eric Smith, Correction Officer Joshua Tulip, Correction Officer James Trombley, Correction Officer Bryan Leclair, and Nurse Geraldine Wilson; (2) Eighth Amendment sexual abuse claim against Smith; and (3) Eighth Amendment medical indifference claim against Wilson survived initial review and required a response. Dkt. No. 6.

      In addition to answering Plaintiff's Complaint, several Defendants moved for partial summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. Dkt. No. 46 ("Motion for Partial Summary Judgment"); 46-1 ("Defendants' Memorandum of Law"); 46-2 ("Defendants' Statement of Material Facts" or "Defendants' SMF"). Specifically,

Defendants seek dismissal of Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Wilson and Eighth Amendment excessive force and failure-to-intervene claims against Gallagher, Lamica, Uhler, Dunning, Gettmann, and Dominic as they pertain to an incident on February 22, 2019. Defs.' Mem. of Law at 3.[1]

Plaintiff responded, asserting that Defendants' arguments are meritless, and cross-moved for summary judgment on the merits of his claims. Dkt. No. 51 ("Plaintiff's Opposition").

For the reasons that follow, the Court denies Defendants' Motion for Partial Summary Judgment and Plaintiff's cross-motion for summary judgment.

## II.   BACKGROUND

Plaintiff was incarcerated at Upstate from about January 14, 2019 through February 26, 2019. Defs.' SMF ¶ 5. On February 26, 2019, Plaintiff was transferred to Clinton Correctional Facility ("Clinton"). Id. ¶ 6.

On February 11, 2019, Plaintiff filed inmate grievance No. UST-64656-19. Id. at ¶ 12. This grievance generally accused Defendant Smith of sexual harassment and discussed Plaintiff's concerns that the facility was not enforcing a protective order. Dkt. No. 46-3 at 11–13. The factual allegations contained in this grievance are not directly relevant to this action. However, Plaintiff contends that these factual allegations are the basis for Smith's later retaliation. See Compl.

On March 11, 2019, while housed at Clinton, Plaintiff filed inmate grievance No. CL-7565361-19, dated March 1, 2019. Defs.' SMF ¶ 16. This grievance reported that supervisors at Upstate had ignored his complaints that Smith sexually harassed Plaintiff on February 2, 2019. Dkt. No. 46-4 at 10. Plaintiff further alleged Smith spit in his food in retaliation for Plaintiff's

---

[1] Citations to filings on the docket refer to the pagination CM/ECF automatically generates.

2

filing complaints regarding the harassment. Id. Relevant to the current motion, Plaintiff asserted that, on February 22, 2019, he asked Dunning for new food and help with Smith. Id. Rather than help, however, Dunning ordered a cell extraction. Id. at 10. According to Plaintiff, several officers—including Gallagher, Lamica, Uhler, Dunning, Gettmann, and Domini—used excessive force during the cell extraction or failed to intervene to stop Plaintiff from being beaten. Id. at 10–11. Plaintiff was then taken for a nurse check with Wilson, but she stood five feet away from him and did nothing to help or care for his injuries and failed to discover a severe cut on Plaintiff's eyelid. Id. at 11.[2]

On May 29, 2019, the Upstate Superintendent denied grievance No. UST-64656-19, finding that Plaintiff's allegations were unsubstantiated. Defs.' SMF ¶ 17. At this time, Plaintiff was housed at Great Meadow Correctional Facility. Id. ¶ 18. On June 14, 2019, the Clinton Superintendent denied grievance No. CL-7565361-19, stating, in pertinent part, that "[a]n investigation has revealed that that [sic] the allegations concerning Upstate CF have been addressed in UST-64656-19." Id. ¶ 22.

Plaintiff appealed grievance No. UST-64656-19 by signing an Appeal Statement on June 18, 2019. Id. ¶ 19. Plaintiff did not appeal the Clinton Superintendent's decision with respect to grievance No. CL-7565361-19. Id. ¶ 23. However, in his appeal statement to grievance No. UST-64656-19, Plaintiff referenced reports in his medical file related to injuries he purportedly suffered during the February 22, 2019 incident. Dkt. No. 46-3 at 15.

The Central Office Review Committee ("CORC") had not issued a response to grievance No. UST-64656-19 before Plaintiff filed his complaint in this action. Defs.' SMF ¶¶ 20–21.

---

[2] This grievance includes allegations about an additional incident of force that occurred later that same day and involved an alleged sexual assault. Id. at 11–12. Defendants are not moving for summary judgment with respect to Plaintiff's claims regarding the second incident on February 22, 2019.

3

Defendants now move for partial summary judgment to dismiss the claims in this action regarding the incident of excessive force mentioned above in grievance No. CL-7565361-19. See Mot. for Partial Summ. J. Generally, Defendants argue the undisputed evidence establishes Plaintiff failed to appeal grievance No. CL-7565361-19 to CORC and therefore failed to properly exhaust his administrative remedies. Defs.' Mem. of Law at 9. Moreover, Defendants contend that, assuming the Court construes grievance No. UST-64656-19 as encompassing the claims in this action, Plaintiff still failed to exhaust his administrative remedies, because he filed this action prior to receiving CORC's decision on his appeal. Id. at 13.

Plaintiff responded, asserting that he appealed to CORC and that Defendants arguments are, therefore, meritless. Pl.'s Opp'n at 3. Plaintiff further filed a "Notice of Motion" purporting to move for summary judgment on the merits of his claim. Id. at 1. In his papers, Plaintiff included several medical records and photographs of his injuries attempting to establish he was injured on February 22, 2019 and still suffers to this day. Dkt. No. 51-1.

### III. LEGAL STANDARD

#### A. Standard of Review

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Salahuddin v. Gourd, 467 F.3d 263, 272–73 (2d Cir. 2006). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential

4

to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. Salahuddin, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

The Second Circuit has established that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." Id. (citation and internal quotation marks omitted). Accordingly, statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and . . .

interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

In applying the summary judgment standard, the district court should not weigh evidence or assess the credibility of witnesses. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) (credibility issues, which are questions of fact for resolution by a jury, are inappropriately decided by a court on a motion for summary judgment).

**IV.     DISCUSSION**

**A. Plaintiff's Failure to Comply with Local Rule 7.1[3]**

In opposing Defendants' summary judgment motion, Plaintiff failed to respond to the statement of material facts filed by Defendants in the manner required under N.D.N.Y. L.R. 7.1(a)(3).[4] While courts are required to give due deference to a plaintiff's pro se status, that status "does not relieve [a pro se] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003).

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the facts in the movant's statement to which the plaintiff has not properly responded will be accepted as true (1) to the extent that they are

---

[3] The Local Rules were amended effective January 1, 2021. In the currently operative version of the Local Rules, L.R. 56.1 deals with summary judgment motions. However, because these motions were filed in 2020, the Court refers to the Local Rules as they existed at that time.

[4] Local Rule 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts. Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." N.Y.N.D. L.R. 7.1(a)(3).

supported by evidence in the record, and (2) provided that the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion.[5] See Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).

Accordingly, the facts set forth in Defendants' Statement of Material Facts that are supported by record evidence and are uncontroverted by nonconclusory allegations in Plaintiff's complaint and verified opposition submissions will be accepted as true. See McAllister v. Call, No. 10-CV-610, 2014 WL 5475293, at *3 (N.D.N.Y. Oct. 29, 2014) (finding allegations in plaintiff's verified complaint sufficient to controvert facts in statement of material facts on motion for summary judgment); Douglas v. Perrara, No. 11-CV-1353, 2013 WL 5437617, at *3 (N.D.N.Y. Sept. 27, 2013) ("Because Plaintiff has failed to raise any question of material fact, the Court will accept the facts as set forth in Defendants' Statement of Facts Pursuant to Rule 7.1(a)(3) . . . supplemented by Plaintiff's verified complaint . . . as true."). As to any facts not contained in Defendants' Statement of Material Facts, in light of the procedural posture of this case, the Court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of Plaintiff. Terry, 336 F.3d at 137.

Moreover, the Second Circuit has ruled that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," including local rules relating to requirements regarding the submission of and response to statements of material facts on summary judgment motions, and to "conduct an assiduous review of the record." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted). In deference to Plaintiff's pro se status, the Court has reviewed the entire record.

---

[5] Defendants provided Plaintiff with the requisite notice of the consequences of his failure to respond to the motion. See Mot. for Partial Summ. J. at 4.

7

With respect to Plaintiff's own cross-motion for summary judgment, however, the Court cannot overlook Plaintiff's failure to comply with the Local Rules. Here, Plaintiff did not submit a Statement of Material Facts, Memorandum of Law or any supporting affidavits. Importantly, the Local Rules provide that "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts *shall* result in a denial of the motion." L.R. 7.1(3) (emphasis added). Without the aid of a statement of material facts, the Court is unable to consider the motion. Furthermore, though Plaintiff has presented evidence that tends to support his allegation that he was *injured* in the alleged assaults, he has not offered any evidence besides his own unsupported assertions that he was assaulted without justification. Accordingly, the Court denies Plaintiff's cross-motion for summary judgment.

### B. Exhaustion

As noted above, Defendants make two arguments with respect to exhaustion. First, they assert Plaintiff's failure to appeal grievance CL-7565361-19 is fatal to his claims. Moreover, anticipating the argument that grievance No. UST-64656-19 could be construed as encompassing the claims in this action, Defendants argue he failed to exhaust that grievance, because he filed suit in this action before receiving a final disposition from CORC.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined and do so properly. Jones v. Bock, 549 U.S. 199, 218 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211. In New York state prisons, DOCCS has a well-established three-step Inmate Grievance Procedure ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7 ("NYCRR"), § 701.5 (2013).

Generally, the IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. § 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. § 701.5(d)(1)(I). CORC is to render a written decision within thirty calendar days of receipt of the appeal. § 701.5(d)(3)(ii).

Complaints of harassment are handled by an expedited procedure which provides that such a grievance, once it is given a number and recorded by the IGP clerk, is forwarded directly to the superintendent of the facility, after which the inmate may appeal any negative determination to CORC. §§ 701.8(h), (i).

Generally, a plaintiff must properly appeal through all the relevant levels of the IGP before seeking relief in a federal court under § 1983. See Ruggiero v. Cty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006).

Finally, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). More specifically, § 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); see also Ross, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (internal quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." Ross, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The Ross Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. Id. at 1859–60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, an administrative

remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

As an affirmative defense, the defendant bears the burden of showing the plaintiff failed to satisfy the exhaustion requirements. See Jones, 549 U.S. at 216; Johnson v. Testman, 380 F.3d 691, 695 (2d Cir. 2004).

As noted above, on March 11, 2019, while housed at Clinton, Plaintiff filed inmate grievance No. CL-7565361-19, dated March 1, 2019. Defs.' SMF ¶ 16. This grievance included the relevant facts regarding the alleged February 22, 2019 assault that is the subject of this motion. Dkt. No. 46-4 at 10–11. Clinton's Superintendent denied this grievance on June 14, 2019. Defs.' SMF ¶ 22. The record evidence establishes that Plaintiff did not appeal the Superintendent's decision related to grievance No. CL-7565361-19. Id. ¶ 23.

Under normal circumstances, Plaintiff's failure to appeal grievance No. CL-7565361-19 would be fatal to his claim. See Ruggiero, 467 F.3d at 176. However, the Superintendent's denial of grievance No. CL-7565361-19 contained a material misstatement regarding the investigation into the events on February 22, 2019. To that end, the Clinton Superintendent stated, in pertinent part, that "[a]n investigation has revealed that that [sic] the allegations concerning Upstate CF have been addressed in UST-64656-19." Defs.' SMF ¶ 22.

Here, the Court concludes that the Superintendent's misstatement is an example of the type of misinformation that would have interfered with Plaintiff's pursuit of relief. See Ross, 136 S. Ct. at 1860 (noting that "interference with an inmate's pursuit of relief renders the administrative process unavailable."). Viewing the evidence in light most favorable to Plaintiff, the Superintendent's affirmative representation that the investigation of the February 22, 2019,

11

incident was being handled by a separate grievance[6] lead Plaintiff to abandon grievance No. CL-7565361-19 and instead appeal grievance UST-64656-19. Indeed, Plaintiff's appeal statement regarding grievance UST-64656-19—filed *after* receiving the Superintendent's denial of grievance No. CL-7565361-19—included allegations related to the February 22, 2019 incident. Dkt. No. 46-3 at 15. Accordingly, the Superintendent's misrepresentation thwarted him "from taking advantage of the grievance process," rendering his remedies unavailable. See Ross, 136 S. Ct. at 1860; see also Perez v. Arnone, No. 12-CV-1591, 2018 WL 3596747, at *8 (D. Conn. July 26, 2018) (concluding administrative remedies were unavailable because a prison official provided misinformation to the plaintiff about the grievance process).

Additionally, Defendants' contention that Plaintiff was able to successfully navigate the IGP as to other matters, see Defs.' Mem. of Law at 15, does not necessarily weaken Plaintiff's unavailability argument. Rather, his history of filing grievances could also suggest that, absent interference, he was capable of complying with the IGP. See Burrell v. Zurek, No. 17-CV-0906, 2019 WL 4051596, at *3 (N.D.N.Y. Aug. 28, 2019).

Defendants further argue, in the alternative, that, if the Court finds Plaintiff adequately exhausted his administrative remedies through his pursuit of grievance UST-64656-19, his claim should still be dismissed because he filed this action before receiving a response from CORC. However, during the pendency of this motion the Second Circuit issued a decision that squarely rejects Defendants' arguments. To that end, the Court held that "an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to

---

[6] Defendants' submissions establish the Superintendent's statement was false. (Dkt. No. 46-3 ¶¶ 30–31.) To that end, Sherri Debyah, the IGP Supervisor at Upstate, indicated that the investigation regarding grievance UST-64656-19 *did not* consider any of the events that took place on February 22, 2019. Id. at ¶ 31. Thus, it appears, from Defendants' own submissions, that *no internal investigation* took place to consider the serious allegations included in grievance No. CL-7565361-19 as they related to Upstate.

respond within the 30 days it is allocated under the regulations." Hayes v. Dahlke, 976 F.3d 259, 270 (2d Cir. 2020). Here, it is undisputed that CORC failed to issue a decision within 30 days after receiving Plaintiff's appeal; and Plaintiff commenced this action only after the relevant timeframe. Defendants acknowledge that Hayes controls the relevant issues and rightfully abandoned this argument with respect to exhaustion. Dkt. No. 59.

Thus, the Court concludes Defendants have failed to meet their burden to establish they are entitled to summary judgement with respect to Plaintiff's claims related to the first incident on February 22, 2019, on exhaustion grounds. Accordingly, the Court denies Defendants' motion.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 46), is **DENIED**; and it is further

**ORDERED**, that Plaintiff's cross-motion for summary judgment (Dkt. No. 51), is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    March 26, 2021
          Albany, New York

_____
Lawrence E. Kahn
Senior U.S. District Judge