UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MIGUEL DIAZ,

                        Plaintiff,

    -against-                                    9:19-CV-1438 (LEK/TWD)

ERIC J. SMITH, *et al.*,

                        Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Miguel Diaz commenced this action pro se on November 20, 2019. Dkt. No. 1. On August 4, 2021, the Honorable Judge Thérèse W. Dancks, United States Magistrate Judge, granted in part and denied in part Plaintiff's motion to file an amended complaint, Dkt. No. 118, and on August 4, 2021, Plaintiff filed his amended complaint, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights at Upstate Correctional Facility ("Upstate Correctional") by defendants Stacy Dominic, Trevor Dunning, Adam J. Gallagher, Gary Gettmann, Robert J. Lamica II, Bryan T. LeClair, Eric J. Smith, James B. Trombley, Joshua Tulip, Donald G. Uhler, Geraldine M. Wilson, Eric E. Marshall, Gabriel Obregozo, and Steven Salls ("Defendants"). Dkt. No. 119 ("Amended Complaint"). On November 1, 2021, Plaintiff filed a motion for summary judgment. Dkt. No. 156 ("Plaintiff's Motion"). On January 31, 2022, Defendants filed a cross-motion for summary judgment in response to Plaintiff's Motion. Dkt. No. 166 ("Defendants' Cross-Motion"). Plaintiff filed a reply and opposed the cross-motion. Dkt. Nos. 169, 170, 171, 178.

Now before the Court is a report and recommendation issued by Judge Dancks on June 21, 2022, recommending that Plaintiff's Motion be denied and further recommending that Defendants' Cross-Motion be granted in part and denied in part. Dkt. No. 199 ("Report-Recommendation"). Plaintiff filed objections to the Report-Recommendation on June 29, 2022. Dkt. No. 201 ("Objections"). For the reasons that follow, the Court approves in part and rejects in part the Report-Recommendation.

## II.   BACKGROUND

### A.   Factual Allegations

Plaintiff's Amended Complaint stems from "two separate documented use of force incidents that occurred on February 22, 2019." R&R at 2. Plaintiff brings Eighth Amendment excessive force and failure-to-intervene claims against Corrections Officers Gallagher, Lamica, Smith, Tulip, Trombley, LeClair, Marshall, Obregozo, Sergeant Dunning, Lieutenant Gettmann, Lieutenant Salls, Captain Dominic, Superintendent Uhler, and Nurse Wilson. Id. Plaintiff also brings an Eighth Amendment sexual abuse claim against Smith. Id. Furthermore, Plaintiff brings an Eighth Amendment medical indifference claim against Wilson. Id. These allegations are detailed in the Report-Recommendation, familiarity with which is assumed. Id. at 3–10.

### B.   The Report-Recommendation

After reviewing Plaintiff's Motion, Judge Dancks found in the Report-Recommendation that Plaintiff had failed to submit a Statement of Material Facts as a part of his Motion for Summary Judgment, as required Local Rule 56.1(a).[1] R&R at 13. In light of Plaintiff's failure to follow Local Rule 56.1(a), Judge Dancks recommended denying Plaintiff's Motion. Id. at 13.

---

[1] "Any motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine

Judge Dancks also recommended denying Plaintiff's Motion by asserting that it "is legally deficient and is replete with conclusory allegations and, as noted, directs the Court to 'look' at the 'massive amounts of evidence' that allegedly supports his claims." Id. at 14. In particular, Judge Dancks found that "no reasonable factfinder could conclude [Nurse] Wilson was deliberately indifferent to Plaintiff's serious medical needs" and "[t]hus, Plaintiff is not entitled to summary judgment on the medical indifference claim." Id. Additionally, Judge Dancks found that "Defendants have submitted declarations detailing their involvement, if any, in each of the documented use of force incidents at issue, to wit: they either did not participate in or observe the actual force at issue and/or the minimal force was reasonably applied in response to Plaintiff's own actions and in a good-faith effort to maintain or restore discipline." Id. at 14–15. Judge Dancks also recommended denying Plaintiff's Motion for these reasons. Id. at 15.

Judge Dancks then turned to Defendants' Cross-Motion. First, Judge Dancks found that neither Uhler, Gettmann, nor Wilson were involved in the use-of-force incidents carried out against Plaintiff. Id. at 18. Judge Dancks stated that "Gettmann's and Uhler's involvement in this action was limited to their supervisory roles as the watch commander and superintendent, respectively, while Wilson's role was limited to her medical care after the first incident." Id. at 19 (footnote omitted). Based on this finding, Judge Dancks recommended granting Defendants' Cross-Motion, as it relates to Plaintiff's excessive force and failure-to-intervene claims against Uhler, Gettmann, and Wilson's alleged involvement in the use-of-force incident carried out against Plaintiff. Id. at 20.

---

issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. <u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion</u>." L.R. 56.1(a) (emphasis in original).

3

Second, Judge Dancks found that "no reasonable jury could find Wilson deprived Plaintiff of adequate medical care." Id. at 22. Judge Dancks emphasized that "the record evidence demonstrates Plaintiff's medical needs were reasonably treated and monitored by Wilson." Id. at 23. Moreover, Judge Dancks found that "no reasonable jury could find Wilson acted with a sufficiently culpable state of mind." Id. Judge Dancks recommended granting Defendants' Cross Motion as it relates to Plaintiff's claim of medical indifference against Wilson. Id. at 25.

Third, Judge Dancks found that there are genuine issues of material fact with regard to the morning use-of-force incident, which allegedly involved Dominic, Trombley, Tulip, Dunning, Smith, Lamica, Gallagher, Marshall, Obregozo, and Salls. Id. at 28–29. Judge Dancks stated that "Defendants have marshalled evidence demonstrating minimal force was used only after Plaintiff refused multiple opportunities to comply with directions." Id. at 30. However, Judge Dancks also observed that "Plaintiff testified under oath that Lamica, Gallagher, Marshall, and Obregozo struck him while he was face down, already subdued, and defenseless, while Salls failed to intervene[,]" and that Plaintiff "claims he was attacked, while unrestrained, under the pretext he spit at Lamica." Id. Furthermore, Judge Dancks stated that "Plaintiff testified Dominic and Dunning were present during the cell extraction and the record demonstrates Trombley was present, manually opened Plaintiff's cell gate and secured it while the extraction and alleged excessive force took place[,]" and that "Plaintiff testified Smith and Tulip were present when he was slammed on his face, kicked, and punched while restrained under the pretext he spit on Lamica." Id. at 30–31. In addition, Judge Dancks found that "Defendants are not entitled to qualified immunity at this stage of the proceeding." Id. at 32. For these reasons, Judge Dancks found a genuine dispute of material fact as to Plaintiff's excessive force and failure-to-intervene

4

claims, and recommended denying Defendants' Cross-Motion as to Dominic, Trombley, Tulip, Dunning, Smith, Lamica, Gallagher, Marshall, Obregozo, and Salls. Id.

Finally, Judge Dancks found that there are genuine issues of material fact with regard to the afternoon use-of-force incident, which allegedly involved LeClair, Trombley, Tulip, Lamica, Smith, and Dunning. Id. at 33. Judge Dancks observed that "Plaintiff testified Tulip, Trombley, Lamica, and LeClair repeatedly beat him with batons." Id. at 33. Plaintiff "testified Smith choked him and said, 'I should kill you right now.'" Id. at 33. Plaintiff asserted that

> they continued to punch, kick, and beat Plaintiff with the shield and their batons. Additionally, Plaintiff testified Dunning witnessed the foregoing and failed to intervene. Plaintiff was then forced to his feet with his arms restrained behind his back. Smith proceeded to reach his left hand into Plaintiff's boxer shorts and pulled on Plaintiff's "scrotum sack and . . . penis" in a "nightmarish way, which is like he's trying to pull it off."

Id. at 33–34 (citations omitted). Again, Judge Dancks also found that "because material issues of fact exist, Defendants are not entitled to summary judgment on the merits or qualified immunity at this stage of the proceeding." Id. at 34. Accordingly, because Judge Dancks found a dispute of material fact as to Plaintiff's excessive force, failure-to-intervene, and sexual assault claims, she recommended denying Defendants' Cross-Motion as to LeClair, Trombley, Tulip, Lamica, Smith, and Dunning. Id.

### III. STANDARD OF REVIEW

"Rule 72 of the Federal Rules of Civil Procedure and Title 28 United States Code Section 636 govern the review of decisions rendered by Magistrate Judges." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 405 (S.D.N.Y. 2002); see also 28 U.S.C. § 636; Fed. R. Civ. P. 72. Review of decisions rendered by Magistrate Judges are also governed by the Local Rules. See L.R. 72.1. As 28 U.S.C. § 636 states:

> Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate [judge]. The judge may also receive further evidence or recommit the matter to the magistrate [judge] with instructions.

28 U.S.C. § 636(b)(1). When written objections are filed and the district court conducts a de novo review, that "*de novo* determination does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, 191 F. Supp. 2d at 406 (emphasis in original); see also 12 Wright & Miller, Fed. Prac. & Proc. Civ. § 3070.2 (3rd ed.) (2022) ("[T]he judge to whom the objection is made must review the record and magistrate's recommendations, and must make a de novo determination of the facts and legal conclusions, receiving additional evidence and rehearing witnesses at his or her discretion. The district judge must not be a rubber stamp." (footnote omitted)).

"The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

"The objections of parties appearing *pro se* are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.'" DiPilato, 662 F. Supp. 2d at 340 (emphasis in original) (quoting Milano v. Astrue, No. 05-CV-6527, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008)). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." DiPilato, 662 F. Supp. 2d at 340 (emphasis in original) (quoting Pinkney v. Progressive Home Health Servs., No. 06-CV-5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)).

## IV.   DISCUSSION

After the Report-Recommendation was issued on June 21, 2022, see R&R, Plaintiff filed his Objections to the Report-Recommendation on June 29, 2022, Dkt. No. 201. Plaintiff indicated that he

> objects to the part w[h]ere Hon. Dancks grants the Defendants' summary judgment motion as to dismissing Plaintiff's medical indifference portion of the claim, against "Defendant Nurse Geraldine Wilson" for the following reasons: Evidence "on file" shows & proves %100! (photos & video recordings) that d[e]spite Nurse Wilson's claim that I had no open areas on my face, that in fact my eye was %100 bleeding while she did her eval[uation] of me "and she made no note of it & provided no medical care for it, & even went as far to write on #4 medical documents that I had no open areas on my face[.]"

Id. at 1 (emphasis and parentheticals in original). In particular, Plaintiff asserts "that as stated in the R&R Defendant Wilson claims to have received notice of the hole in my eye on the date of inc[i]dent at 10 o/clock (A.M.) and made a call to get me further care 'at that moment' . . . (but) 'the evidence on file' show[s] that contra[r]y to her statement, P.A. Mahoney wrote that she did 'not' get a call from Defendant Wilson about the hole in my eye, 'until[]' (1:10 P.M.) . . . ." Id. at

7

2–3 (emphasis in original). Plaintiff argues that "this evidence again shows deliberate medical indifference on Nurse Wilson's behalf" and Plaintiff "ask[s] that the court not adopt this portion of the R&R . . . ." Id. at 3. Thus, Plaintiff's objection focuses on Judge Dancks' recommendation to grant summary judgment in favor of Wilson with regard to Plaintiff's Eighth Amendment medical indifference claim. As such, the Court will conduct a de novo review of this specific portion of the Report-Recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Under Federal Rule of Civil Procedure 56: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). At the summary judgment stage, "[t]he question is not whether th[e] proof will ultimately be found convincing or persuasive. That would be an issue for trial. Rather, the question is only whether the parties have proof for their claims and defenses such that a trial is needed." 11 Moore's Fed. Prac. Civ. § 56.02 (2022). Moreover, when assessing a motion for summary judgment—even if there is no dispute as to any material fact—the court must then determine whether the moving party is entitled to judgment as a matter of law: "The nonexistence of a factual dispute is a mere predicate to summary judgment, and is never, by itself, dispositive of the motion. For example, if the facts are undisputed but there is more than one legally permissible conclusion that could be drawn from those facts, a trial will be required and summary judgment must be denied." Id. Therefore, the Court must determine whether it should accept, reject, or modify the Magistrate Judge's recommendation to grant Defendants' Cross Motion for summary judgment with respect to Plaintiff's Eighth Amendment medical indifference claim against Wilson.

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments . . . ." U.S. Const. amend. VIII. "In order to establish an Eighth Amendment claim

arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "The standard of deliberate indifference includes both subjective and objective components." Chance, 143 F.3d at 702. "'First, the alleged deprivation must be, in objective terms, sufficiently serious." Id. (cleaned up) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). "Second, the defendant 'must act with a sufficiently culpable state of mind." Chance, 143 F.3d at 702 (quoting Hathaway, 37 F.3d at 66). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance, 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Under the first, objective prong of an Eighth Amendment medical indifference claim, the Court must "[d]etermin[e] whether a deprivation is an objectively serious deprivation [and that] entails two inquiries." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). "The first inquiry is whether the prisoner was actually deprived of adequate medical care." Id. "As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." Id. (citing Farmer, 511 U.S. at 844–47). "Thus, 'prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause,' and, conversely, failing 'to take reasonable measures' in response to a medical condition can lead to liability." Salahuddin, 467 F.3d at 279–80 (citations omitted) (quoting Farmer, 511 U.S. at 845, 847).

"Second, the objective test asks whether the inadequacy of medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin, 467

9

F.3d at 280. "For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. "The Second Circuit has stated that a medical need is 'serious' for constitutional purposes if it presents 'a condition of urgency that may result in degeneration or extreme pain.'" Bumpus v. Canfield, 495 F. Supp. 2d 316, 320 (W.D.N.Y. 2007) (cleaned up) (quoting Chance, 143 F.3d at 702). "Among the relevant factors for determining whether a serious medical need exist are '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Bumpus, 495 F. Supp. 2d at 320 (quoting Chance, 143 F.3d at 702).

The Magistrate Judge found that "no reasonable jury could find Wilson deprived Plaintiff of adequate medical care." R&R at 22. The Court respectfully disagrees. Judge Dancks based her findings on Wilson's Declaration. Id. at 22. Specifically, Wilson stated in her declaration that she "observed a 1/4 inch bruise to Plaintiff's upper right lip" and that she "observed a bruise to Plaintiff's left eye and on the side and under the eye, however there were no open areas on Plaintiff's left eye . . . ." Dkt. No. 166-13 at 3. Wilson also stated that later in the day: "[A]n Office of Mental Health staff member stopped by the medical office and advised me that Plaintiff had a cut on his eye." Id. at 4. Wilson said in her declaration: "I responded to Plaintiff's cell at which time I did observe a cut on Plaintiff's eye. This cut was not present during my initial evaluation of Plaintiff." Id.

In his deposition testimony, Diaz stated that Wilson was "the nurse who didn't do no fully inspection on me. And when I went back to my cell, realized I had a hole the size of a nickel over my eye that she did not inspect it. She wrote down on the paperwork that I had no

10

open wounds, but clearly, the pictures and evidence show I had a hole the size of a nickel over my eyelid, my right eyelid." Dkt. No. 166-3, Ex. A ("Plaintiff's Deposition") at 15. Plaintiff also stated in his testimony that "R.N. Geraldine Wilson comes in. She says, what's your injuries? I get to explain it to her my injuries. This is what's going on. She goes, okay. You could see in the video, Sergeant Dunning is like hovering—hovering over her as to influence her to—hey, you know what the right—you know what's going on? You could see that in the video." Id. at 23–24. Plaintiff then said: "They then send me back to my cell. When I get back to my cell, I immediately look in the mirror to examine my injuries, part of me examine my injuries. I see a big nickel size hole over my eye. It's about roughly right before nine thirty, give or take that time, a.m. I get to . . . and let them know, hey I got a big hole over my eye. I need stitches. I need stiches. They ignore me." Id. at 24.

In his testimony, Plaintiff stated that later in the day "Geraldine Wilson, the nurse" came back and "she's like, what's going on? I say, miss, I've been telling y'all for four hours. I got this nickel size hole over my eye I need sutures." Id. at 25. Subsequently, Plaintiff said: "I show her. She goes, oh God, where'd that come from? I say, Ms. Wilson, had you had checked me, you would have seen it. And I would have been sent to the hospital. She walks away mumbles. Well, let it dry. I'm like, let it dry?" Id.

Plaintiff also asserted in his testimony "while Nurse Wilson is writing her medical report" that "in the video, you can clearly—I mean, in the video and photos, you could clearly see that my eye is bleeding. She makes no documentation of the right eye injury bleeding at all." Id. at 35. "And on the left eye, she puts no open areas. So clearly, she puts three documents that said I had no open areas on my eye when video and photo show otherwise." Id. Elsewhere, after Plaintiff testified that "from nine twenty in the morning till approximately one ten in the

11

afternoon, everybody knowing about the hole over my eye, even the Chaplin and the O.M.H. [Office of Mental Health] worker writing and I have the documents as well." Id. at 54. When asked during his testimony, "Did your—did your eyelid hurt, did that area hurt?" Plaintiff stated, "Absolutely, extremely." Id. at 54–55. Plaintiff also testified that this lack of treatment was the impetus for his suicidal ideation:

> So when Nurse Wilson came around with the officer and I showed her the nickel-sized hole in my eyelid and she walks away mumbling let it dry off. And the C.O. [corrections officer] goes the walk off. That's when the act of desperation kicked in. Because I realized, five hours good—four or five hours me not receiving care that they're clearly not trying to give me no care and sweep this under the rug.
>
> So I started saying, I'm going to hang up and that the officer there reported it to Sergeant Dunning, and Sergeant Dunning came—

Id. at 56. Plaintiff clarified that by "hang up" he meant: "That's like attempt to kill yourself and put something around your neck, to that nature." Id. at 57. When asked, "Had you—had you ever attempted suicide prior to this?" Plaintiff stated, "No, absolutely not." Id.

Thus, there is a dispute of material fact between Plaintiff and Wilson. Finding that Plaintiff did not have a hole over his left eye—as asserted by Wilson—would preclude Plaintiff's Eighth Amendment medical indifference claim against Wilson, but finding that Plaintiff did have a hole over his left eye—as stated by Plaintiff—would allow a jury to assess Plaintiff's Eighth Amendment claim. "It is up to the trier of fact to determine which side is more persuasive. Therefore, this issue may not be decided in favor of either party on summary judgment . . . ." Chi. Ins. Co. v. Kreitzer & Vogelman, 210 F. Supp. 2d 407 (S.D.N.Y. 2002). While the Court makes no determination as to the merits of this case, the Court finds that a reasonable jury, if that jury chose to believe Plaintiff over Wilson, could find under the objective prong of the test for medical indifference under the Eighth Amendment that Plaintiff was deprived of medical

treatment for the injury to his eye, and that this injury was sufficiently serious to cause Plaintiff extreme pain, which Plaintiff says was so excruciating that it led to his suicide attempt.

The Magistrate Judge also stated that "[e]ven assuming Plaintiff could satisfy the objective prong, the Court finds no reasonable jury could find Wilson acted with a sufficiently culpable state of mind." R&R at 23. As noted above, the subjective prong of the test for Eighth Amendment medical indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance, 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Moreover, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703. "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind,' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" Bumpus, 495 F. Supp. 2d at 321 (citations omitted) (quoting Estelle, 429 U.S. at 102, 105–06).

In this case, Wilson asserted in her declaration that when she went to see Plaintiff later in the day she "did observe a cut on Plaintiff's eye" but stated that "[t]his cut was not present during [her] initial evaluation of Plaintiff." Dkt. No. 166-13 at 4. In contrast, Plaintiff testified that Wilson came to see him several hours after she initially assessed him and he complained to her about the "nickel size hole over [his] eye[,]" Pl.'s Dep. at 25. When he informed her that "Ms. Wilson, had you had checked me, you would have seen it[,]" id., she then "walk[ed] away [and] mumble[d]" the phrase, "Well, let it dry." Id. Plaintiff also testified that "when Nurse

13

Wilson came around with the officer and [he] showed her the nickel-sized hole in [his] eyelid and she walk[ed] away mumbling let it dry off," Pl.'s Dep. at 56, this was "when the act of desperation kicked in," id., and he decided he was "going to hang up," id., meaning "attempt to kill yourself and put something around your neck . . . ." Id. at 57.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court finds that a reasonable jury could infer, if they chose to credit Plaintiff's testimony, that Wilson was subjectively aware of Plaintiff's injury and, rather than treating that injury, consciously disregarded it and failed to treat it, and instead walked away. Based on Plaintiff's assertions, this was not merely a disagreement over the proper type of medical treatment but was instead a denial of medically necessary treatment, which could be considered "repugnant to the conscience of mankind" and "incompatible with the evolving standards of decency that mark the progress of a maturing society[,]" Estelle, 429 U.S. at 102, 105–06, especially because this denial ultimately led to Plaintiff's attempted suicide. Therefore, while the Court makes no determination on the merits of this case, the Court finds that there is a dispute of material fact as to whether Wilson acted with the sufficiently culpable state of mind to satisfy the subjective prong of medical indifference under the Eighth Amendment. "Because the Court finds that there are material issues of fact in dispute as to both the objective and subjective elements of Plaintiff'[s] Eighth Amendment medical indifference claim against [Defendant], it recommends that [Defendant] be denied summary judgment on the claim." Quezada v. Fischer, No. 13-CV-0885, 2017 WL 9509993, at *32 (N.D.N.Y. Aug. 31, 2017), report and recommendation adopted 2017 WL 4286304 (N.D.N.Y. Sept. 27, 2017).

For these reasons, the Court finds that Defendants' Motion fails to show that there is no dispute of material fact and fails to show that the movant is entitled to judgment as a matter of law, as required by Rule 56(a). Therefore, the Court rejects the Report-Recommendation to the extent that it recommends granting the Defendants' Cross-Motion for summary judgment with regard to Plaintiff's claim of Eighth Amendment medical indifference as to Wilson. Instead, the Court denies the Defendants' Cross-Motion with regard to the medical indifference claim against Wilson.

The Court reviews for clear error the other portions of the Report-Recommendation to which neither party filed objections. The Court finds no clear error. Therefore, the Court adopts the remaining portions of the Report-Recommendation in their entirety.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 199) is **APPROVED AND ADOPTED** to the extent that it recommends denying Plaintiff's Motion for summary judgment (Dkt. No. 156); granting Defendants' Cross-Motion for summary judgment (Dkt. No. 166) by dismissing Plaintiff's Eighth excessive force and failure-to-intervene claims against Uhler, Gettmann, and Wilson for lack of personal involvement; denying Defendants' Cross-Motion as to the excessive force and failure-to-intervene claims against Dominic, Trombley, Tulip, Dunning, Smith, Lamica, Gallagher, Marshall, Obregozo, and Salls; and denying Defendants' Cross-Motion as to the Eighth Amendment excessive force and failure-to-intervene claims against LeClair, Trombley, Tulip, Lamica, Smith, and Dunning, and Eighth Amendment sexual assault claim against Smith; and it is further

**ORDERED**, that Plaintiff's Motion for summary judgment is **DENIED**; and it is further

**ORDERED**, that Defendants' Cross-Motion for summary judgment with regard to Plaintiff's excessive force and failure-to-intervene claims against Uhler, Gettmann, and Wilson for lack of personal involvement is **GRANTED**; and it is further

**ORDERED**, that Defendants' Cross-Motion for summary judgment as to the excessive force and failure-to-intervene claims against Dominic, Trombley, Tulip, Dunning, Smith, Lamica, Gallagher, Marshall, Obregozo, and Salls is **DENIED**, and that Defendants' Cross-Motion as to the excessive force and failure-to-intervene claims against LeClair, Trombley, Tulip, Lamica, Smith, and Dunning, and as to the sexual assault claim against Smith is **DENIED**; and it is further

**ORDERED**, that the Report-Recommendation is otherwise **REJECTED**; and it is further

**ORDERED**, that Defendants' Cross-Motion for summary judgment as to Plaintiff's Eighth Amendment medical indifference claim against Wilson is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to terminate Uhler and Gettmann from this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  August 23, 2022
        Albany, New York

LAWRENCE E. KAHN
United States District Judge