UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MIGUEL DIAZ,

                              Plaintiff,

    -against-                                  9:19-CV-1438 (LEK/TWD)

ERIC J. SMITH, *et al.*,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

        Plaintiff Miguel Diaz commenced this action pro se on November 20, 2019. Dkt. No. 1. On August 4, 2021, Plaintiff filed an amended complaint, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights at Upstate Correctional Facility ("Upstate Correctional") by Stacy Dominic, Trevor Dunning, Adam J. Gallagher, Robert J. Lamica II, Bryan T. LeClair, Eric J. Smith, James B. Trombley, Joshua Tulip, Geraldine M. Wilson, Eric E. Marshall, Gabriel Obregozo, Steven Salls (collectively, "Defendants"), Gary Gettmann, and Donald G. Uhler.[1] Dkt. No. 119 ("Amended Complaint").

        On November 1, 2021, Plaintiff filed a motion for summary judgment. Dkt. No. 156 ("Plaintiff's Motion"). On January 31, 2022, Defendants filed a cross-motion for summary judgment in response to Plaintiff's Motion. Dkt. No. 166 ("Defendants' Cross-Motion"). On June 21, 2022, the Honorable Judge Thérèse W. Dancks, United States Magistrate Judge, issued a Report-Recommendation recommending that Plaintiff's Motion be denied and further

---

[1] The Court notes that its August 23, 2022, Memorandum-Decision and Order terminated Uhler and Gettmann from this action. Dkt. No. 213 at 16 ("August 2022 Order"). As such, they are no longer considered defendants in this case.

recommending that Defendants' Cross-Motion be granted in part and denied in part. Dkt. No. 199 ("Report-Recommendation"). On August 23, 2022, this Court issued a Memorandum-Decision and Order approving and adopting portions of the Report-Recommendation and rejecting other portions of the Report-Recommendation. August 2022 Order at 15–16.

Now before the Court is Defendants' motion for reconsideration as to the Court's August 2022 Order, filed on September 2, 2022. Dkt. No. 215 ("Motion for Reconsideration"). On September 12, 2022, Plaintiff filed a response. Dkt. No. 217 ("Plaintiff's Response"). For the reasons set forth below, the Court denies Defendants' Motion for Reconsideration.

## II.   BACKGROUND

The factual allegations in this case are detailed in the Report-Recommendation, familiarity with which is assumed. R. & R. at 3–10.

This Court's August 2022 Order adopted the Report-Recommendation to the extent that it (1) recommended denying Plaintiff's Motion; (2) granting Defendant's Cross-Motion as to Plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against Uhler, Gettmann, and Wilson for lack of personal involvement; (3) denying Defendants' Cross-Motion as to the excessive force and failure-to-intervene claims against Dominic, Trombley, Tulip, Dunning, Smith, Lamica, Gallagher, Marshall, Obregozo, and Salls; (4) denying Defendants' Cross-Motion as to the Eighth Amendment excessive force and failure-to-intervene claims against LeClair, Trombley, Tulip, Lamica, Smith, and Dunning; and (5) denying Defendants' Cross-Motion as to the Eighth Amendment sexual assault claim against Smith. August 2022 Order at 15. The Court rejected the other portions of the Report-Recommendation. Id. at 16. In particular, the August 2022 Order denied Defendants' Cross-Motion as to Plaintiff's Eighth Amendment medical indifference claim against Wilson. Id.

Defendants' Motion for Reconsideration seeks review of the August 2022 Order's denial of Defendants' Cross-Motion as to Plaintiff's Eighth Amendment deliberate medical indifference claim against Wilson. Dkt. No. 215-1 at 1 ("Defendants' Memorandum of Law").

## III.     LEGAL STANDARD

Defendants seek to bring this Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 60. Mot. for Recons. at 1. While Defendants do not specify which provision of Rule 60 applies to the Motion for Reconsideration, it appears that Defendants are arguing that this is a Rule 60(b) motion for grounds for relief from a final judgment, order, or proceeding, rather than a Rule 60(a) motion for corrections based on clerical mistakes. See Fed. R. Civ. P. 60(a)–(b). However, Rule 60(b) is inapplicable to Defendants' Motion for Reconsideration because the Court did not enter a judgment following its August 2022 Order. See generally Docket; see also Buczakowski v. 1199SEIU, No. 18-CV-0812, 2020 U.S. Dist. LEXIS 76931, at *2 (N.D.N.Y. May 1, 2020) (Kahn, J.) ("As an initial matter, '[w]hile [Plaintiff] purports to bring this motion under Rule 60(b) of the Federal Rules of Civil Procedure, Rule 60(b) [is] inapplicable to the pending motion because . . . as pursuant to Rule 54(b), this Court did not enter a judgment following its ruling on the motions to dismiss.'" (cleaned up) (quoting Ferring B.V. v. Fera Pharms., LLC, No. 13-CV-4640, 2015 U.S. Dist. LEXIS 120771, at *4 n.3 (E.D.N.Y. Sept. 10, 2015))). Instead, "Rule 54(b) governs the analysis of the instant Motion for Reconsideration." Buczakowski, 2020 U.S. Dist. LEXIS 76931, at *2.[2]

Rule 54(b) states:

---

[2] The Local Rules state that "a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged . . . order . . . ." L.R. 60.1 (emphasis in original). The Defendants' Motion for Reconsideration was timely filed in accordance with the Local Rules.

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Thus, "[i]n a case with multiple parties and claims, an adjudication as to one or more but fewer than all of the parties and claims is interlocutory, unless the court makes the proper certification pursuant to Rule 54(b)." Burke v. Warren Cnty. Sherrif's Dep't, 916 F. Supp. 181, 183 (N.D.N.Y. 1996). "It does not matter if the partial adjudication is denominated a summary judgment." Id.

"The standard for granting a motion for reconsideration [pursuant to Rule 54(b)] 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Brooks v. Hogan, No. 14-CV-0477, 2017 U.S. Dist. LEXIS 37439, at *3 (N.D.N.Y. Mar. 15, 2017) (Kahn, J.) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "Motions under Rule 54(b) are subject to the law-of-the-case doctrine." Kaufman v. Columbia Mem. Hosp., No. 11-CV-667, 2014 U.S. Dist. LEXIS 83344, at *6 (N.D.N.Y. June 19, 2014). "This means that the decisions referenced in Rule 54(b) 'may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" Id. (cleaned up) (quoting Off. Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003)).

"Thus, reconsideration 'should not be granted where the moving party seeks solely to relitigate an issue already decided.'" Brooks, 2017 U.S. Dist. LEXIS 37439, at *3 (quoting Shrader, 70 F.3d at 257). Accordingly, courts do not give litigants a second bite at the apple when addressing Rule 54(b) motions. See Appleby v. JPMorgan Chase Bank, N.A., No. 19-CV-10947, 2021 U.S. Dist. LEXIS 146032, at *29 (S.D.N.Y. Aug. 4, 2021) ("Nor is Rule 54(b) 'a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple[.]'" (cleaned up) (quoting Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012))); In re Ski Train Fire, 224 F.R.D. 543, 548 (S.D.N.Y. 2004) ("[T]his Court will not exercise its discretion under Rule 54(b) to reward plaintiff's failure to diligently and promptly develop its case for jurisdiction in California by giving it a second bite at the apple.").

IV.   DISCUSSION

Defendants argue that "the Court's application of the law to the facts in the record before it amounts to clear error and a gross injustice to Defendant Wilson." Defs.' Mem. of Law at 2. Clear error is an exacting standard of review for Defendants to meet: "Although 'courts ordinarily have not defined precisely what constitutes clearly erroneous or manifest injustice for reconsideration purposes, at least one court has held that reconsideration is not warranted unless the prior decision is 'dead wrong.'" Brinkmann v. Town of Southold, No. 21-CV-02468, 2022 U.S. Dist. LEXIS 157357, at * 5–6 (E.D.N.Y. Aug. 31, 2022) (quoting Corpac v. Rubin & Rothman, LLC, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013)).

In the August 2022 Order, the Court conducted a de novo review of the Magistrate Judge's determination as to Plaintiff's Eighth Amendment medical indifference claim against

5

Wilson, because Plaintiff specifically objected to this portion of the Report-Recommendation. August 2022 Order at 7–8.

### A. Summary Judgment

As noted above, the Court's August 2022 Order dealt with the summary judgment stage of the litigation. August 2022 Order at 8. The Court will reiterate the standard for summary judgment here because it is relevant to the Reconsideration Motion. Pursuant to Federal Rule of Civil Procedure 56: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" while "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. Pshp., 22 F.3d 1219, 1224 (2d Cir. 1994). When assessing a summary judgment motion, "[t]he Court construes all evidence in the light most favorable to the non-moving party and draws all inferences in the non-moving party's favor." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 458 (S.D.N.Y. 2011). Additionally, when a party "is a *pro se* litigant, [courts] read [the party's]

supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

### B. Eighth Amendment Medical Indifference

Likewise, while the Court set forth the standard for Eighth Amendment medical indifference claims in the August 2022 Order, the Court will reiterate it here because Defendants have put this analysis at issue in the Motion for Reconsideration. August 2022 Order at 8–10. The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments . . . ." U.S. Const. amend. VIII. As the Supreme Court has repeatedly stated: "[W]e have held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (citations omitted) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle, 429 U.S. at 104). "The standard of deliberate indifference includes both subjective and objective components." Chance, 143 F.3d at 702. "'First, the alleged deprivation must be, in objective terms, sufficiently serious.'" Id. (cleaned up) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). "Second, the defendant 'must act with a sufficiently culpable state of mind.'" Chance, 143 F.3d at 702 (quoting Hathaway, 37 F.3d at 66). "An official acts with requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Chance, 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

### 1. *Eighth Amendment Objective Prong*

Defendants challenge the Court's analysis of the objective prong by arguing that: "[T]he Court improperly considered Plaintiff's suicidal actions as an element of its analysis of the deliberate indifference claims against Defendant Wilson." Defs.' Mem. of Law at 6.

"Determining whether a deprivation is an objectively serious deprivation entails two inquiries." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). "The first is whether the prisoner was actually deprived of adequate medical care." Id. "As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." Id. (citing Farmer, 511 U.S. at 844–47). "Thus, 'prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause,' and, conversely, failing 'to take reasonable measures' in response to a medical condition can lead to liability." Salahuddin, 467 F.3d at 279–80 (internal citations omitted) (quoting Farmer, 511 U.S. at 845, 847).

"Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin, 467 F.3d at 280.

"[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). However, the Second Circuit has explained that "[t]he standard for Eighth Amendment violations contemplates 'a condition of urgency' that may result in 'degeneration' or extreme pain.'" Chance, 143 F.3d at 702 (quoting Hathaway, 37 F.3d at 66); see also Salahuddin, 467

F.3d at 280 ("Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Id. (quoting Chance, 143 F.3d at 702)).

"In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." Salahuddin, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" Id. (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

Defendants disagree with the Court's finding that "a reasonable jury, if that jury chose to believe Plaintiff over Wilson, could find under the objective prong of the test for medical indifference under the Eighth Amendment that Plaintiff was deprived of medical treatment for the injury to the eye, and that this injury was sufficiently serious to cause Plaintiff extreme pain, which Plaintiff says was so excruciating that it led to his suicide attempt." August 2022 Order at 12–13. Specifically, Defendants contest "Plaintiff's allegations that he tried to kill himself due to the delay in care for his eye" by arguing that this is not a "'fast-degenerating condition'" and that "this is not the type of scenario that is contemplated by the relevant case law . . . ." Defs.' Mem. of Law at 6. Thus, the Defendants question whether Plaintiff's medical conditions constituted "'a condition of urgency' that may result in 'degeneration' or extreme pain.'" Chance, 143 F.3d at 702 (quoting Hathaway, 37 F.3d at 66).

As the Second Circuit stated in Chance: "[I]f prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide

9

appropriate treatment may well violate the Eighth Amendment." 143 F.3d at 702. Thus, a gash to the face—such as the gash at issue in the case before this Court—can be considered "sufficiently serious" under the Eighth Amendment if the cut causes "degeneration" or "extreme pain." Id. Additionally, an inmate's suicide attempt is an injury that can create a deliberate indifference claim under the Eighth Amendment. See Allah v. Kemp, No. 08-CV-1008, 2010 U.S. Dist. LEXIS 141905, at *22–23 (N.D.N.Y. Nov. 9, 2010) (stating that "[i]n an inmate suicide context, there are two scenarios where deliberate indifference may exist[;]" "[f]irst, 'officials could be deliberately indifferent to the risk of suicide by failing to discover an individual's suicidal tendencies[;]'" "[s]econd, officials 'could have discovered and have been aware of the suicidal tendencies, but could be deliberately indifferent in the manner by which they responded to the recognized risk of suicide.'" (quoting Kelsey v. City of New York, No. 03-CV-5978, 2006 U.S. Dist. LEXIS 91977, at *16 (E.D.N.Y. Dec. 18, 2006)), report and recommendation adopted in 2011 U.S. Dist. LEXIS 17308 (N.D.N.Y. Feb. 22, 2011). Accordingly, an inmate's suicide attempts can be considered "sufficiently serious" under the Eighth Amendment. See Allah v. Kemp, No. 08-CV-1008, 2010 U.S. Dist. LEXIS 25781, at *19–20 (N.D.N.Y. Feb. 25, 2010) (allowing an inmate-plaintiff to proceed on an Eighth Amendment deliberate indifference claim based on his suicide attempts because "Plaintiff's mental health needs were unmet and were, objectively, sufficiently serious" (citing Salahuddin, 467 F.3d at 280)), report and recommendation adopted in 2010 U.S. Dist. LEXIS 25714 (N.D.N.Y. Mar. 18, 2010). Because a suicide attempt, on its own, can meet the objective prong of the Eighth Amendment inquiry, the Court declines to adopt Defendants' argument that when courts are determining whether medical conditions—such as Plaintiff's wound at issue in this case—are "sufficiently serious" under the objective prong of deliberate indifference, courts cannot consider related suicide attempts.

Instead, the Court finds that this case is analogous to the situation described by the Second Circuit in Chance. A "gash . . . that is becoming infected" and a gash that is so agonizing it causes the inmate to attempt to commit suicide are both instances of medical conditions exemplifying "degeneration" or "extreme pain" that meet the sufficiently serious requirement of the objective prong of the deliberate indifference standard under the Eighth Amendment. Chance, 143 F.3d at 702.

Defendants' citations to cases regarding delay in treatment are also inapposite. Defendants cite to Palacio v. Ocasio, No. 02-CV-6726, 2006 U.S. Dist. LEXIS 57339 (S.D.N.Y. Aug. 11, 2006), arguing that Palacio demonstrates that Wilson should be insulated from liability because of a "less than two-hour delay in treatment . . . ." Defs.' Mem. of Law at 5–6. Palacio is inapplicable here because the Court is dealing with the claim that "Plaintiff was deprived of medical treatment" by Wilson, August 2022 Order at 12–13, not a delay in treatment claim. As discussed above, when "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Salahuddin, 467 F.3d at 280. In contrast, "where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." Id. This applies when "the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment[,]" id., at which time the "the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone[,]'" id. (quoting Smith, 316 F.3d at 185). Because Palacio dealt with delay in treatment, 2006 U.S. Dist. LEXIS 57339 at *39–40, which applies a "narrower" seriousness inquiry, Salahuddin, 467 F.3d at 280, Defendants' reliance on Palacio is misplaced, since delay in treatment is not at issue here.

11

Defendants also rely on Lee v. Frederick, 519 F. Supp. 2d 320 (W.D.N.Y. 2007) in their discussion of delay in treatment. Defs.' Mem. of Law at 5–6. In Lee, the court repeatedly emphasized that any delay in treatment was caused by the fact that the plaintiff had been placed in tuberculosis hold, and that the prison had a "'legitimate, neutral interest in containing tuberculosis.'" 519 F. Supp. 2d at 326 (quoting Word v. Croce, 230 F. Supp. 2d 504, 511 (S.D.N.Y. 2002)). There is no indication that tuberculosis exposure is at issue in the case pending before this Court. Accordingly, the Defendants have not demonstrated clear error or manifest injustice as to the Court's findings on the Eighth Amendment's deliberate indifference objective prong, nor have Defendants demonstrated that the Court's "prior decision is 'dead wrong.'" Brinkmann, 2022 U.S. Dist. LEXIS 157357, at *6.

 2. *Eighth Amendment Subjective Prong*

Defendants also challenge the Court's findings on the subjective prong of Eighth Amendment deliberate indifference. Defs.' Mem. of Law at 4.

"The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind." Salahuddin, 467 F.3d at 280. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." Id. "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. As the Second Circuit has explained:

> Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices.

Id.

12

Defendants argue that the August 2022 Order "indicates that, at the very most, Defendant Wilson could be found guilty of negligence, which the Court agrees does not amount to a constitutional violation." Defs.' Mem. of Law at 4. First, this is a reiteration of Defendants' earlier arguments in their Cross-Motion. Defs.' Cross-Mot. at 11–12. Indeed, as Defendants acknowledge, the Court explicitly recognized in the August 2022 Order that a medical malpractice claim brought by a prisoner does not automatically rise to the level of an Eighth Amendment claim: "'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" August 2022 Order at 13 (quoting Estelle, 429 U.S. at 106). As the Court explained further: "'[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.'" August 2022 Order at 13 (quoting Chance, 143 F.3d at 703). Thus, the Court applied the proper legal standard when assessing Eighth Amendment deliberate indifference claims brought by a prisoner—Defendants simply disagree with the Court's determination that Wilson's failure to provide care meets the Eighth Amendment deliberate indifference standard. As stated above, Defendants' attempt to relitigate an issue that was already decided weighs against granting the Motion for Reconsideration. See Brooks, 2017 U.S. Dist. LEXIS 37439, at *3.

Furthermore, to the extent that the Court could construe Defendants' assertion that "at the very most, Defendant Wilson could be found guilty of negligence" as a new argument, Defs.' Mem. of Law at 4, that argument is insufficient for the Court to find clear error or manifest injustice. As the Second Circuit has stated:

> [W]hile "mere medical malpractice" is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the

> prison doctor that evinces "a conscious disregard of a substantial risk of serious harm." Accordingly, not every instance of medical malpractice is, *a priori*, precluded from constituting deliberate indifference.

Hathaway, 99 F.3d at 553 (emphasis in original) (citation omitted) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Thus, although Estelle said that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner[,]" Estelle, 429 U.S. at 106, "[t]he Supreme Court's statement [in Estelle] cannot be construed to mean that there are no instances of malpractice that can rise to the level of deliberate indifference." Hathaway, 99 F.3d at 554.

As the Court stated in the August 2022 Order, when Wilson discussed the "nickel size hole over [Plaintiff's] eye" with Plaintiff several hours after her initial assessment, she "'walk[ed] away [and] mumble[d]' the phrase 'Well, let it dry.'" August 2022 Order at 13 (quoting Dkt. No. 166-3, Ex. A at 25 ("Plaintiff's Deposition")). Plaintiff testified that "this was 'when the act of desperation kicked in,' and he decided he was 'going to hang up,' meaning 'attempt to kill [him]self and put something around [his] neck . . . .'" August 2022 Order at 13 (quoting Pl.'s Dep. at 56, 57). Construing all evidence in the light most favorable to the non-moving party—Plaintiff—and reading Plaintiff's pro se papers liberally to raise the strongest arguments they suggest, the Court concluded in the August 2022 Order that a reasonable jury could "cho[o]se to credit Plaintiff's testimony, that Wilson was subjectively aware of Plaintiff's injury and, rather than treating that injury, consciously disregarded it and failed to treat it, and instead walked away." August 2022 Order at 14. Thus, assuming, *arguendo*, that Wilson committed medical malpractice, the Court would still conclude, pursuant to the Second Circuit's decision in Hathaway, that a reasonable jury could credit Plaintiff's testimony and determine that "the malpractice involves culpable recklessness" because Wilson's failure to act evinced "a

14

conscious disregard of a substantial risk of serious harm." Hathaway, 99 F.3d at 553. Accordingly, the Court does not find clear error or manifest injustice in denying Defendants' Cross-Motion for summary judgment.

To the extent that Defendants construe the Court's determination that "Wilson merely 'walked away' after her conversation with Plaintiff at his cell" as "a credibility determination[,]" this construal is misplaced. Defs.' Mem. of Law at 5. As the Court's August 2022 Order stated, "a reasonable jury *could* infer, if they *chose* to credit Plaintiff's testimony . . . ." August 2022 Order at 14 (emphasis added). The Court's language is conditional and hypothetical. A reasonable jury could choose to believe Plaintiff's testimony, or a reasonable jury could choose to believe Wilson's testimony. As the Second Circuit has observed: "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." Chance, 143 F.3d at 703. In this case, the Court found that there was a genuine dispute of material fact as to whether Wilson's actions were the product of deliberate indifference. Accordingly, because the Court "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them[,]" Gallo, 22 F.3d at 1224, the Court denied Defendants' Cross-Motion for summary judgment and left the determination of the disputed material facts to the factfinder at trial. Once again, the Court finds no clear error or manifest injustice, and for this reason Defendants' Motion for Reconsideration is denied.

V.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion for Reconsideration (Dkt. No. 215) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  December 19, 2022
        Albany, New York

_____
LAWRENCE E. KAHN
United States District Judge